The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you. We'll call 4-23-0297, the State of Rice. Katherine Lynn Rice, Federickson Appellant versus James G. Rice, Appellee. Counsel for the Appellant, please state your full name for the record. Kristi Tackett Hunt. Thank you. For the Appellee? Christopher Ryan. Very well. You may proceed. Well, good afternoon, Your Honors, and to Counsel. May it please the Court. The matter before the Court today involves a deed that transferred the family farm of the Appellant, Ernest Gregory Rice, to the Appellee, who was also his son, James G. Rice. During the course of this litigation, Ernest Gregory Rice, who I often refer to as Greg, died, and so this case has been, since his death, it's been prosecuted by the independent executor of his estate, and this appeal was brought forward by that executor as well. As I was mentioning, this case involves a deed that was executed by the Appellant in 2010. At the time of the execution, there was a power of attorney that was in effect. That power of attorney had been executed by the Appellant in 2005. In that power of attorney, the Appellant designated and appointed the Appellee as his attorney, in fact. The trial court, throughout the course of the litigation, considered and reconsidered whether that power of attorney gave rise to a fiduciary relationship between the parties. And in each and every occasion, the trial court determined that there was, in fact, a fiduciary relationship between the Appellant and the Appellee, with the Appellee being the dominant party. That fiduciary relationship is relevant because it informs the court of how to analyze whether that deed was, in fact, legitimate or whether it was the product of undue influence and fraud. Because the fiduciary relationship existed, there is a presumption that that deed is fraudulent. And as a result of that presumption, the burden of proof shifts from the Appellant or shifted from the Appellant to the Appellee. Can I ask you about that? Yes. Isn't the presumption something that disappears, the bubble bursts, when an adequate amount of evidence is introduced by the party against whom the burden operates? In this case, that amount being clear and convincing evidence. Doesn't the presumption disappear once that quantum of evidence is introduced? I think that is one way that that issue is looked at, that there is a burden shift and then the presumption disappears once the clear and convincing standard has been overcome. I articulate it a little differently, but I think it's just semantical differences. But, yes, I would agree that the presumption exists until the party that benefited from the presumed fraudulent transaction proves by clear and convincing evidence that the transaction was actually in good faith and was just and did not betray the confidence reposed in him by the trusting party. In the trial court, there was a decision that found the deed to be legitimate. In other words, the court held in a very brief oral decision that the deed was the product of the will of the Appellant and that there was no undue influence. That trial court decision is the subject of the appeal, and the Appellant is asking this court to overturn that decision and set aside that deed. Again, it's important to understand that the Appellant, as I refer to him, is Greg Rice, who is deceased, but the actual party in this case is the executor of Greg's estate. There are two issues for consideration that are before this court today. First, the question is, did the trial court properly apply the law in the context of a fiduciary relationship? I'll talk a little bit more about the analysis in just a few minutes, but the first question relates to whether or not the trial court actually applied that analysis properly as required by Illinois law. And then second, did the defendant satisfy his burden of proof? And as we've already mentioned, that burden of proof is a higher level. It is a clear and convincing standard, which is an elevated standard. So with regard to the shift of the burden of proof, when that burden of proof shifts, we then have to require the Appellant, I'm sorry, the Appellee in this case, to prove that there was a transaction that was fair, that it was made in good faith, that it was not a transaction that betrayed the confidence that was reposed in him by his principal, in this case, the Appellant. Don't we know that the trial court put that burden on the defendant? We know the trial court found that there was a fiduciary relationship, that the defendant would bear the burden of proving the propriety of the transaction. We go to trial, it's the defendant making the opening statement, it's the defendant offering evidence first. Doesn't this give every indication that the trial court well understood that the obligation of disproving fraud or undue influence had shifted to the defendant? Well, I think all of those things are guides to the court, but I don't think the court ever gave any explicit indication that it appreciated that burden shift or the standard of proof. And so there may be an assumption that the court knew, but I don't think there was anything explicit that came from the court that indicated that it understood that burden shift or the standard of proof. The order of the proofs in and of itself is not telling? I'm sorry, can you ask that question again? The order in which the proofs are presented is not telling to us? Are you asking about the final order, the order of the court? Dealing with the burden? Well, I think again, like I said, I think it's a guide. I think that the trial court left it to the parties to determine who was going to proceed first. And that's the way that the parties presented their evidence. I don't think that they, you know, it was my experience at trial that that was not directed by the court. Well, regardless of whether it was directed by the court, the court ruled in August of 2020 that the defendant was a fiduciary and it would be his burden to disprove fraud or undue influence. The court having said that, why would we think that somehow the court wasn't doing that at the hearing? Well, that may be the case, and that certainly may be the way that this court perceives the decision that came from the trial court. In the event that that is the way that this court sees the decision of the trial court, then the question is whether the decision reached by the trial court is against the manifest weight of the evidence. So, with regard to the standard of review, that is relevant. But either way, the question comes down to what was the weight of the evidence and how did it sway? Well, but apparently it did sway the trial court. That's pretty definite to say this will. Well, the use of the word will in two different ways. The will and the deed were the will of the deceased. This is what he wanted to happen, apparently from the lawyer's testimony. So I understand there were some inconsistencies.  And I didn't even hear a hint of any evidence that would rebut that. Now, I understand that becomes awkward when you're talking about the burden of proof. But in my mind, the trial court, while he didn't do it artfully, said this deed is good. This happened because this is what the deceased wanted to happen. This is what the deceased had expressed to his lawyer. And what testimony was there that would even cast a shadow of a doubt as to that effort by the son to overcome? Well, I think, I'm sorry, excuse me. I think that the question becomes how is that analysis done and was the analysis followed? So the court was clear that it believed that the. Can I just interrupt? So we're back to the how the analysis was done and not the manifest weight anymore. I want to know what issue you're addressing. Well, the so OK, so the analysis of whether the burden was I'm sorry, whether the standard of proof was met is what I'm going to talk about now. And that relates to the manifest weight of the evidence issue. Aren't they really two different issues, two different standards of review? If the trial court applied the wrong legal standard, that's not a manifest weight issue. If the trial court made certain findings, that is a manifest weight issue. I think we might get in trouble if we start crossing the streams on that. So the way that I see this and the way that I believe that that Illinois provides is that when we are looking at the burden of proof. What needs to be accomplished is that there needs to be clear and convincing evidence, and that comes in the form of full and frank disclosure, adequate consideration and competent and independent advice. These are illustrative but not exclusive factors, correct? That's well, there's significant factors that the court has identified as relevant in the context of determining whether. The the standard of proof has been accomplished. Yeah. Principles are often. Older parents, agents are often children. I don't think there's anything in the case law. I've seen that gifts are prohibited, so I'm not sure. Consideration is always going to be an issue in a case like this, is it? No, I would agree with you there. I would agree that these are significant factors to consider. They don't all need to be present, but I think that you need to that the court needs to consider what what the circumstances were with with regard to each significant factor. So I would agree with you that in the relevant or in the realm of a gift consideration may be lacking and that not all gift for lack of consideration would be a fraudulent transaction. However, when we're looking at this particular situation, what we see is that the defendant. Did not provide any detail of his understanding of the transaction to the appellant. Why why would he the transaction originated with? Greg. Greg is the one who who with the advice of counsel came up with the idea and explained it to defendants. So why would defendant be required to explain to the decedent the transaction the decedent came up with? Well, that presumes from the outset that there was no discussion or influence that happened prior to what attorney cover testified was a global discussion with the appellant about. Opportunities that he might have to. Manages the state, so the testimony of attorney cover started with he, you know, he knew the appellant for a very long time. They were acquainted for years and years and years. There was no testimony offered that there was any professional relationship between attorney cover and the appellant until 2005. In 2005, we know that there were wills and powers of attorney executed by covers own testimony. Those documents were obtained in what he called a rush rush manner. There was. Potentially a an in person meeting. It might have just been a phone call. Attorney cover wasn't. Couldn't recall. So at that point in time, there was some direction that was given about how wills should be constructed. Those wills were constructed. They were mailed to the appellant. The validity of the will is no longer at issue on appeal, right? Well, the are the what happens is that the appellee uses the wills as a as a launchpad for an argument that the gift that was made in 2010 was just an advancement on the estate plan. So it moved it forward into being implemented during life as opposed to at death. Right. And it's in the will is presumed valid. And the challenge to it is gone. So why would that argument not also hold water? Well, I think that that to equate the will with the gift is. Does not take into full consideration the difference between the two things. The difference is revoke ability, I suppose. The plan was in 2005 that the farm was going to go to defending. The deed here accelerated that. That's really the difference. That's all. Well, except for the fact that they will would have reserved a life estate and all assets, including the real estate to the surviving spouse, which would have. Made certain that income was available after the after the deed was was executed. All ownership rights were terminated. There was no right to income. There was no right to. Participation in decisions regarding the property and even covers on testimony indicated that he wasn't sure that the appellant understood that. And I think I think an important thing here to realize and to recognize is that undue influence and undue influence happens very subtly. And I believe and I would argue that the reason that there is a burden shift around. Transactions between parties who are both included in a fiduciary relationship, one in a position of power and one in a position of trust is the result of a recognition of that subtlety. Fair enough, but let's not even talk about undo. Let's tell me what is the evidence of any influence from the defendant that affected this transaction. Well, I think the presumption is that it was influenced. Okay. But but back to justice connects question. Even though it's a high standard, if there's nothing on this, this scale and everything is on this scale. That sounds like it's not going to be difficult to meet the clear, convincing standard when there's when he's offered evidence that the transaction originated with Greg. There's no evidence that he had any influence at all on it. What well, how can that be against the manifest way? What evidence in the record are you relying on to say that that conclusion is against the manifest way? Well, I think that the record reflects through the testimony of attorney cover that there was there was a discussion about a transaction. The transaction didn't happen after that discussion. The transaction happened after a meeting, which no one can remember how it came to be scheduled. But everyone was present at, including the appellee. The appellee indicated that he recognized that in his testimony, he recognized that his father was aging. He was becoming feeble and that something needed to be done. Is it correct that the decedent and the lawyer came up with the idea to advance? The premise of the will and to do the. I think that the testimony David cover indicated that, yes, as the decedent's choice, he wanted to whatever he was doing to protect the land. Both as a centennial farm and also to make sure that if he ends up in a nursing home, everything's not going to go to the feds. That was his choice. He was looking for a means to accelerate to protect the land and to protect assets that he apparently assumed would benefit him because the trustee was given the power. To help with expenses. Well, I don't think the testimony of David cover indicated that Greg had any understanding of what would happen after the transfer of the real estate. Cover's testimony specifically indicated that he didn't know if if Greg understood that he would no longer have a right to income. He didn't know if he would have any involvement in management of the property. It was unclear. I see my time is up and so I would conclude with just reiterating that the appellant requests that this court overturn the decision of the trial court and set aside the deed. Thank you. Any further questions? Very well. Council Ryan, you may proceed on behalf of the appellee. Thank you, Your Honor. May it please the court and counsel. I'm Christopher Ryan representing James Rice. A couple of corrections. First of all, not every judge has said there was a burden. Judge Ferenbacher's initial ruling on our motion was that there was no duty because my clients and the uncontradicted testimony was he never saw the power of attorney and no one explained to him what it was. And my argument was, if you haven't seen it, you can't have accepted the duty. The only thing the father ever said to him that came into evidence was that openness if I become incapacitated. So he presumed it was a medical power of attorney. And indeed, the first time he went to the safe to look at the will and found the power of attorney was in 2012 after his father had a serious accident and was in critical care. That buttresses that was his understanding. Having said that, we worked with the presumption. We knew there was the presumption. All the briefing from the time of Ferenbacher's sudden, rather inexplicable in my opinion, reversal of himself saying, no, there is a duty. We proceeded under that burden. We briefed it at the pretrial. We talked about it at the pretrial. And while counsel is correct that I was the one that said, well, if I've got the burden, I go first, right? That was how we proceeded. And the court agreed. So it wasn't imposed by the court. It was simply a reflection of the fact that we were entitled to go first if we had the burden as though we were the plaintiff. And you saw that in the opening statement. You saw it in the closing arguments. That's how we proceeded. There was no doubt in anyone's mind. I disagree with Ms. Hackett Hunt on a couple of points here. The wills are not a launchpad for an argument. They were the expression of intent of the mother and father of these children here. And ironically, I mean, from their standpoint, it was Betty's will where she received the life estate. She also gave the residue to Jamie. So she was going to give the farm to Jamie if she inherited the life estate. So both parents saw that basically Jamie was the one that was going to get the farm. And indeed, there was testimony from Culver that Greg and Betty at one time said to him, well, we've given the other kids other stuff so they don't need it. Betty is the one who came to him after the wills were signed and asked whether the life estate would be probated. So there's no argument about the 2005 wills or whether they understood it. So now we get into the burden. The only evidence, and keep in mind, several of the siblings were dead. Other people were disabled and couldn't testify. So we were down to basically David Culver, Mary Hawk, who witnessed the will, and the insurance agent. And the testimony was very clear, and I don't think there's anything to contradict it. And as Judge Doherty said, you know, if you've got a scale, everything was on one side, saying Greg went independently to his attorney. Culver said, no, I'm not just going to let you give the farm to Jamie. Let's investigate other options to prevent the farm from being taken by medical bills. They go to the insurance agent to investigate life insurance. That's foreclosed. That industry was bankrupt and burnishing those policies anymore. So they go back to this idea of a trust. It's Culver that explains the trust to Greg. It's Greg and Culver that bring Jamie into the conversation. So I agree with the court's questions. How could Jamie, a farmer, explain this complicated legal document to his father? He had to have it explained to him by Culver. So there was an hour meeting with Culver and the father, and then they brought Jamie in for another meeting. Counsel keeps arguing that there was no consideration. While it is true that the language in the trust said he may provide income to the parents, Culver explained the reasons for that. That's a tax issue, because if you put a specific amount, if you said 100% of the income of the farm, Medicare can attach that amount and take the income of the farm away. So you have to leave the language vague. But then look at the evidence of what Jamie did with the farm income. He paid literally, in some cases, 100% of the farm income to the parents when both of them were in the nursing home. And as he testified and his wife testified, sometimes they were actually kicking in their own money to help support the parents above and beyond what the farm could produce, because it could not produce enough to support both parents in the nursing home. Under those facts, I'm not sure what else we could have put in. There's not one shred of evidence that Jamie forced his father to go to his attorney. There's not one shred of evidence that he had any information. He testified he was surprised. Now, they made a big deal about the fact that he said, well, I was kind of surprised, kind of not. Well, at one point, he farmed with his dad for 25 years. He had a feeling that he was going to get the farm, but there's no evidence that they ever had direct discussions about it. And her case is based on suppositions and presumptions saying something must have happened. One of those presumptions is legitimate, though, right? Yes, yes. In favor of the principle when an agent benefits from a transaction. Correct, correct. But in this case, we rebutted it with clear and convincing evidence that this whole setup was created by Greg and his attorney. And Cover explained it to Greg and Cover explained it to Jamie. So I'm not sure what that as we started out, that overcame the presumption. And then I think we're just back to even and we clearly met the burden of showing that the gift was appropriate. Keep in mind, too, again, when when Jamie is paying out 100 percent of the income from the farm, how did that affect the parents differently? They got more than they would have gotten if they were just farming it because the farm could have been attached if there was a shortfall. And that was their desire from the beginning. It's in the wills that they want the farm to stay in the family. So there's a very clear attempt of the parents, both of them, to give the farm to Jamie in order to preserve it and so that it would not be sold and divided between the heirs when they die. Everything that happened after that was a furtherance of that intent with Cover as the attorney, not through Jamie, through Cover. And the fact that Jamie said, OK, I mean, that's that's not a breach of duty. And he did provide consideration. Cover provided the advice to Greg. Two questions. First of all, is it a contract or a gift? And secondly, if it's a contract, what was the consideration? As Cover explained it, Greg had to deed the farm to Jamie. And then Jamie had to create the trust. And that was because if if if if Greg created a self-settled trust, it was it was attachable. So it was a little dance there that they had to do where Greg had to do the deed to Jamie. Jamie sent back the trust, executed trust documents. Cover said he held the deed and didn't file it until Jamie provided the signed documents and the trust was in place. So he was under a fiduciary duty at that point. So so I guess it starts with a gift and then turns into a trust. I'm not sure how you would phrase that that dance that I discussed, but the first step was a gift. But the consideration was the creation of the trust and the actual providing of up to 100 percent or more of the income of the farm for their support. And there's no argument that he used any of that money for himself. There's no argument that he didn't provide everything that the parents needed throughout their lifetimes. And in some cases took money out of his own pocket. That's not the typical case you see. Typically, you see the people using it for their own purposes. And here he was using it to support the parents during their lifetimes, which would be almost exactly like a life estate. And that's that's certainly consideration and protection from creditors, which is exactly what the parents expressed they wanted in their wills and in their numerous conversations with Dave Cover that he testified to. They were constantly coming into his office saying we're worried about the farm getting taken for medical bills. So all the evidence seems to point in one direction. They have nothing to contradict the evidence we put in. The executive testified, but she didn't add any evidence that contradicts everything we've said here today. So for those reasons, I think the court's order should be upheld and this case should be resolved. If there's any questions, I'll answer them. OK, thank you. Yes. So a couple of points that I would like to clarify. The appellate or the I'm sorry, the appellee has regularly and continuously argued that there was no fiduciary relationship. He's indicated that not all of the judges agreed that there was a fiduciary relationship. I just want to correct that because all of the judges did ultimately hold that there was a fiduciary relationship. One just changed his mind when I mentioned that the will was a launchpad for the defendant's argument. That was in response to Judge Doherty's question about the relevance of the will in this particular context today. And so it has been leveraged by the appellee as evidence of an intent for the advancement of the estate plan. And so that is why I use that language. I just wanted to clarify that. I think it's important to consider the entirety of the testimony that was presented by Attorney Cover and his own characterization of his meeting, his initial meeting with the appellant, Greg Rice. And at that meeting, he indicated that that was one of the drop in meetings, which he indicated that his both the appellant Greg Rice and his wife would drop in on occasion. It didn't sound like from a cover's testimony that it was all the time. In fact, he said they didn't abuse their ability to do that. And they would pop in for 10 minutes or so. There's no indication in cover's testimony of the length of the meeting that he had with the appellant in late 2009, early 2010. Opposing counsel would indicate that it's an hour. There was no evidence presented by the testimony of the attorney that that's how long it lasted. I think it is relevant to consider the plethora of issues that Attorney Cover indicated that he discussed at that impromptu drop in meeting with the appellant. So, Greg Rice was. How does any of this go to the defendant's undue influence or breach of his fiduciary duty? This isn't a case against the attorney. No, it's not a case against the attorney, but the only thing that the are 1 of the primary things that the defendant relies upon is the assertion that there was advice that was independent and competent that was offered to the appellant prior to the transaction. And if you look at coverage evidence that it wasn't independent. Well, there was a relationship that existed with the prior to the creation of the 2005 wills. So, there the testimony of the defense, the appellee was that he had worked with. Attorney cover on his own wills prior to his parents going in to seek over for their wills. So there was a relationship there. I would, I think the evidence reflects, especially the testimony of cover that there was a dual representation of both. The appellant and the appellee once that meeting was held and a deed was created at that point, cover indicated that he was representing both of the both of the parties and with regard to that. So. That's after the transaction has essentially been. Planned on decided on. So, how does that. I don't think that covers testimony reflects that there was a transaction planned on. In advance of that meeting between the appellate the appellee and the attorney. The evidence is that the attorney explained it to defend it. So, it had to have been hatched before the defendant was involved. Well, the testimony of the, of the attorney indicates that there was a global discussion at 1 meeting and then the next meeting was a discussion between all of the both of the parties. And there was an explanation of a plan that had been created. There was no, there was no testimony of any national, you have to explain the plan to the appellee. Doesn't that sound like doesn't that indicate, isn't there a strong influence that that's been developed between the deceit and the lawyer. Well, I think the testimony again, I see my time is up. May I may I finish the. Okay, so I think the testimony of the attorney was that this global discussion resulted in his determination that if there was going to be a transfer of the farm that this needed to happen. So, based on his testimony, it appears that he is the 1 who created the plan and explained it to both the appellant and the aptly at that February meeting. Further questions. Very well, the court will take this matter and advisement and we now stand in recess.